**Electronically Filed
Intermediate Court of Appeals
29480
20-DEC-2013
08:33 AM**

NO. 29480

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


LAWRENCE P. PECK, ROBBYN L. PECK and
PECK, INC., a Hawai'i Corporation, Plaintiffs-Appellees,
v. LYNN LINDER NAKKIM, CONTINENTAL PACIFIC, LLC, a
Delaware Limited Liability Company, Defendants-Appellants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 04-1-374)


MEMORANDUM OPINION
(By: Foley, Presiding Judge, Leonard and Ginoza, JJ.)

Defendant-Appellant Lynn Linder Nakkim (**Nakkim**) appeals from the Judgment and Decree of Specific Performance (**Judgment**) filed on October 2, 2008, in the Circuit Court of the Third Circuit (**Circuit Court**).[1] After a jury-waived trial, judgment was entered against Nakkim and in favor of Plaintiff-Appellees Lawrence P. Peck (**Peck**), Robbyn Peck (**Mrs. Peck**; together, the **Pecks**), and Peck, Inc. (collectively, the **Plaintiffs**), on Plaintiffs' Complaint for Specific Performance, Injunctive Relief And Damages (**Complaint**).

I.    BACKGROUND

The parties in this case executed two documents:    (1) an Agreement of Sale for a 50-acre parcel of land (**Property**) between Nakkim and the Pecks; and (2) a Construction Contract between Nakkim and Peck, Inc., whereby Peck, Inc. would build a single story home (**Home**) for Nakkim on one of Nakkim's other properties.   The Agreement of Sale, dated November 29, 2003,

_____

[1]    The Honorable Greg K. Nakamura presided.

provided that the Pecks would pay a purchase price of $180,000 for the Property by:

1) Assuming the NOTE on the Property. The balance of $87,412.42 shall be assumed by [the Pecks] and [the Pecks] accept[] the terms and conditions of the NOTE [in favor of Continental Pacific, LLC (**Continental Pacific**)] . . . .

2) It is agreed that [the Pecks] shall build on [Nakkim's] property a HOME as defined in CONSTRUCTION CONTRACT documents.

The Agreement of Sale also provided that the Pecks would lease 40 acres of the Property to Nakkim for the purpose of grazing horses for five years at $1,000 per year. Under the Agreement of Sale, the Pecks were responsible for taxes and other charges. Finally, in the event of default, Nakkim was required to provide notice in writing, by registered or certified mail, after which the Pecks would have ten days to correct the default.

Peck testified that he made timely monthly payments beginning on or about December 1, 2003, with the exception of the March 2004 payment. Nakkim notified Peck of the arrearage on August 12, 2004 via letter. There is no evidence that the letter was sent through registered or certified mail, as required under the Agreement of Sale. Nakkim's records indicate that the Pecks sent Nakkim a check for the March 2004 payment, which was dated August 13, 2004.

The Construction Contract, also dated November 29, 2003, was an agreement between Nakkim and Peck, Inc., whereby Peck, Inc. would build a single-story home on Nakkim's property in the Waiki'i Ranch area for the sum of $223,396 (**Construction Sum**), to be applied to the Pecks' purchase of the Property. The Construction Contract included a clause (**Additional Cost Clause**) providing for an increase in cost:

15 **ADDITIONAL COST:** If [Peck, Inc.] wishes to make a Claim[2] for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims

---

[2] A Claim for the purposes of the Construction Contract is a "demand or assertion by one of the parties seeking adjustment or interpretation of the Contract terms, ... with respect to the terms of the Contract[,] . . . [and] also includes other disputes and matters in question between [Nakkim] and [Peck, Inc.] arising out of or related to the Contract." A Claim must be made by written notice.

relating to an emergency endangering life or property. If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by [Nakkim] to stop the Work where [Peck, Inc.] was not at fault, (3) a written order for a minor change in the Work issued by [Nakkim] or agent thereof, (4) failure, by [Nakkim], to make payment due, (5) termination of the [Construction Contract] by [Nakkim], or (6) other reasonable grounds, Claims shall be filed in accordance with the procedure established therein.

Under section 4.1 of the Construction Contract, "[Nakkim] shall secure [for] and pay for necessary approvals, easements, assessments and charges required for the construction, use or occupancy of structures."

The Circuit Court found, and Nakkim does not dispute, that, although they were set forth in two documents, the Agreement of Sale and the Construction Contract were intended by the parties to be an expression of a single agreement between Plaintiffs and Nakkim (the **Contract**).

Pursuant to the requirements of the Waiki'i Ranch Homeowners' Association, the owner of a lot in Waiki'i Ranch development must obtain approval from the Waiki'i Design Committee (**Design Committee**) before constructing on their lot. Nakkim encountered a number of setbacks in seeking the Design Committee's approval of the construction of the Home due to deficiencies including the inability to produce an adequate topological map, the original design of the House being too small, and failure to submit a color board.[3]

On July 14, 2004, Peck, Inc. sent a letter to "Perspective" clients notifying them that construction costs in Hawai'i had increased dramatically, and that Contract Sums for certain contracts would be increased accordingly. The letter noted that Peck, Inc. was entitled to increase the cost of construction through the Additional Cost Clause of the Construction Contract. The letter was not specifically directed to Nakkim, nor did it include a specific figure by which construction costs would rise. The letter stated, however, that

---

[3] A color board is a piece of plywood with samples of colors and styles of the exterior of the house.

"notice is hereby given that the Contract Sum will be increased accordingly prior [to] the breaking ground and beginning construction on your project." Peck testified that the purpose of the letter was merely to keep clients abreast of recent cost increases in the construction industry.

In response, Nakkim sent Peck a letter on July 21, 2004, in which she stated that "a deal was a deal," and began to take over payments on the Continental Pacific Mortgage "in anticipation of [Peck's] defection[.]" Additionally, Nakkim wrote that she would increase the sale price of the Property if he wanted to renegotiate the price of the Home.

As early as October 7, 2004, Nakkim began listing the Property for sale. Then, through a November 4, 2004 letter, Nakkim gave Peck, Inc. seven days to complete the Home. Citing the "Termination of Contract by Owner" clause of the Construction Contract, Nakkim alleged that Peck had "persistently and repeatedly failed to perform the work according to the contract and its specifications," and that such delays entitled her to "finish the work by whatever reasonable method [she] the owner may find expedient." This ultimatum was reiterated in a November 5, 2004 letter, which also informed Peck that the "entire matter" was cancelled. However, it appears that, as of November 5, 2004, Nakkim had not obtained final approval to begin construction of the Home.

On November 12, 2004, Plaintiffs filed their Complaint seeking, *inter alia*, injunctive relief to prevent Nakkim from selling the Property and specific performance of the Agreement of Sale. Nakkim answered and filed a counterclaim seeking, *inter alia,* cancellation and rescission of the parties' agreements. Following a jury-waived trial in March and April of 2008, the Circuit Court issued its Findings of Fact (**FOFs**), Conclusions of Law (**COLs**), and Order on July 23, 2008. The court's FOFs included, *inter alia*:

> 4. On November 29, 2003, the Plaintiffs and [Nakkim] signed two documents: An Agreement of Sale and a Construction Contract. These two documents were intended by the parties to be an expression of a single agreement between Plaintiffs and [Nakkim].

5.  Under the terms of the Agreement of Sale, Plaintiffs Lawrence L. Peck and Robbyn L. Peck agreed to purchase and Defendant Lynn Linder Nakkim agreed to sell the [Property] for the sales price of One Hundred Eighty Thousand Dollars ($180,000.00).

6.  The payment by Plaintiffs for the [Property] under the Agreement of Sale was to be made as follows:  Payment of $87,412.42 representing the balance on [Nakkim's] mortgage due and owing to [Continental Pacific]; the balance of $92,587.58 to be paid by providing Defendant credit for payments due from [Nakkim] under the Construction Contract to Plaintiff Peck Inc.[]

7.  The Agreement of Sale makes specific reference to the Construction Contract.  In particular, the Agreement of Sale states under the heading of "PAYMENT OF THE PURCHASE PRICE" that:

> It is agreed that BUYER [Plaintiffs Lawrence and Robbyn Peck] shall build on SELLER'S [Nakkim] property a HOME as defined in CONSTRUCTION CONTRACT documents. The balance of this AGREEMENT OF SALE shall be paid by SELLER first benefits [sic] due on the CONSTRUCTION CONTRACT and shall continue until the balance due on this AGREEMENT OF SALE is paid in full with the exception of the NOTE amount.
>
> . . . .

9.  The "Construction Sum" under the Construction Contract was set at $223,396.00 but was subject to adjustment.  The Construction Sum was "subject to additions and deductions as provided in the Contract documents." Paragraph 15 of the General Conditions of the Construction Contract permitted [Peck, Inc.] to make a claim for an increase in the Contract Sum because of additional cost on certain specific grounds plus "other reasonable grounds".

10.  The Court finds that increase in the cost of construction costs which arose during delay in the commencement date of construction is a reasonable ground for seeking an increase in the Construction sum if the delay was not the result of fault on the part of Plaintiff Peck Inc.

11.  [Nakkim] was responsible for obtaining approvals from the Design Committee of the Waiki i Ranch Homeowners' Association ("Design Committee").  In order to build, [Nakkim] was required to obtain a variance from the design committee to allow for a trapezoidal building area.  On August 19, 2004, the Design Committee gave notice to the members of the Waiki'i Ranch Homeowners['] Association of a public hearing to consider [Nakkim's] application for a variance.

12.  On September 28, 2004, the Design Committee approved the variance and also gave preliminarily [sic] approved [Nakkim's] project plans.  The preliminary approval required that [Nakkim] meet certain conditions, including the submission of a landscape plan.  Therefore, [Nakkim] could not have given notice to Plaintiff Lawrence Peck to begin construction on [Nakkim's] Waiki'i Ranch property until after November 5, 2004.

13.  As a result, the Court finds that the delay in the start of the construction on [Nakkim's] Waiki i Ranch

Property was not the fault of Plaintiffs, but primarily attributable to [Nakkim's] failure to get approvals from the Design Committee in a timely fashion.

14. The court finds that the Contract Sum was not in fact increased by Plaintiffs. Rather, Plaintiff Lawrence P. Peck or Plaintiff Peck, Inc. merely gave notice that he or it intended to increase the [Contract Sum]. However, he or it did not go forward with the procedure set forth in the Construction Contract for an actual increase in the [Contract Sum].

15. The Court finds that Plaintiffs Lawrence P. Peck and Robbyn L. Peck have continued to tender to [Nakkim] the monthly payments due under the Agreement of Sale. In addition, [Nakkim] has not made demand [sic] upon Plaintiffs Lawrence P. Peck and Robbyn L. Peck for the real property taxes, association dues, etc. that they were required to pay under the Agreement of Sale. In any case, [Nakkim] did not give notice to Plaintiffs Lawrence P. Peck and Robbyn L. Peck of the need to correct any default as to payments before purporting to cancel the Agreement of Sale as required under the Agreement of Sale.
. . . .

17. The Court determines that Plaintiffs Lawrence P. Peck and Robbyn L. Peck are entitled to specific performance of the Agreement of Sale. . . .

18. The Court determines that the terms of the Construction Contract are, at this juncture, too imprecise to specifically enforce. For the same reason, the Court determines that Plaintiffs have not proven that they are entitled to recover damages for loss of profits under the Construction Contract.

Based on its FOFs, the Circuit Court concluded, *inter alia*:

1. Plaintiffs Lawrence P. Peck and Robbyn L. Peck have substantially complied with the terms and conditions of the Agreement of Sale and are entitled to specific performance of the Agreement of Sale.

2. Specific performance is an appropriate remedy under the Agreement of Sale since land is unique.
. . . .

3. The Court determines that the terms of the Construction Contract are, at this juncture, too imprecise to specifically enforce. For the same reason, the Court determines that Plaintiffs have not proven that they are entitled to recover damages for loss of profits under the Construction Contract.

4. The Court determines that Plaintiffs Lawrence P. Peck and Robbyn L. Peck are entitled to specific performance of the Agreement of Sale. Plaintiffs shall perform their obligations by paying off the mortgage held by [Continental Pacific]; paying the balance due under [the] Agreement of Sale, less $5,000 for the horse grazing license; and paying [Nakkim] for the advances made by [Nakkim] for expenses which were Plaintiffs' obligations under the Agreement of Sale to [Nakkim]. Full payment is to be made within 60 days

6

after either the parties agree as to the amounts payable or the amounts are determined by the Court. If Plaintiffs Lawrence P. Peck and Robbyn L. Peck fail to make timely payment of the balance due, then the Agreement of Sale shall be cancelled or the property foreclosed upon as provided therein.

The Circuit Court entered the Judgment on October 2, 2008, pursuant to Hawai'i Rules of Civil Procedure (**HRCP**) Rule 54(b). Nakkim timely filed this appeal.

II. POINTS OF ERROR

On appeal, Nakkim challenges FOFs 9, 10, 15, and 17, and COLs 1 and 4, and raises five points of error alleging that the Circuit Court erred in:

1. Concluding that the Pecks substantially complied with the terms and conditions of the Agreement of Sale in that the non-performance and/or breach of the Construction Contract constituted a material default of the Agreement of Sale under the parties' indivisible agreement;

2. Enforcing Nakkim's obligation to transfer the property to the Pecks, notwithstanding the Circuit Court's failure to conclude that Nakkim was in breach of either the Agreement of Sale or Construction Contract;

3. Interpreting the Construction Contract to permit unilateral price increases based upon Peck, Inc.'s increased expenses;

4. Enforcing Nakkim's obligation to transfer the property notwithstanding the non-performance of the condition precedent and/or failure of consideration for Nakkim's obligation, and for the failure to order a rescission of the Contract and a return of the parties to their status quo ante; and

5. Finding that Nakkim failed to give notice of default under the Agreement of Sale, in that Nakkim's letters to Peck constituted notice.

III. APPLICABLE STANDARDS OF REVIEW

"As a general rule, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court." Brown v. KFC Nat'l Mgmt. Co., 82 Hawai'i

226, 239, 921 P.2d 146, 159 (1996) (citations omitted). Findings of fact are reviewed under the clearly erroneous standard of review. Ueoka v. Szymanski, 107 Hawai'i 386, 393, 114 P.3d 892, 899 (2005) (citation omitted).

> A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. A finding of fact is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Bremer v. Weeks, 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004) (citation omitted). "However, a [conclusion of law] that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." Chun v. Bd. of Trs. of Employees' Ret. Sys. of Haw., 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (citation and internal quotation marks omitted).

"The awarding of specific performance is a matter addressed to the sound discretion of the trial court . . . and its decision will be set aside only where there has been a manifest abuse thereof." Clarkin v. Reimann, 2 Haw. App. 618, 623, 638 P.2d 857, 861 (1981) (citations omitted). A manifest abuse of discretion occurs where the lower court's decision "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id. at 624, 638 P.2d at 861 (citations omitted).

IV. DISCUSSION

Nakkim's overall argument is that Plaintiffs breached both the Agreement of Sale and the Construction Contract, and the Circuit Court did not find her to be in breach of either, so the court should have ordered both parts of the indivisible Contract rescinded, and restored the Property to Nakkim.

A.    Plaintiffs' Substantial Compliance

Nakkim makes several arguments in support of her first point of error. She first argues that the Circuit Court erred because it did not find that the construction of the Home was an unsatisfied condition precedent to her transfer of the Property under the Agreement of Sale. A condition precedent is "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under the contract becomes due." Brown, 82 Hawai'i at 246, 921 P.2d at 166 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 224 (1981)). Furthermore, "[a] condition is a limitation, and does not create an obligation, nonperformance of which would constitute default." Adair v. Kona Corp., 51 Haw. 105, 112, 452 P.2d 449, 454 (1969). "Where it is doubtful whether words [in a contract] create a promise or an express condition, they are interpreted as creating a promise[.]" Calderia v. Sokei, 49 Haw. 317, 325, 417 P.2d 823, 828 (1966) (citing RESTATEMENT (FIRST) OF CONTRACTS § 261 (1932)) (other citations omitted).

Construction of the Home was part of the payment for the conveyance of the Property. The Agreement of Sale states:

> PAYMENT OF THE PURCHASE PRICE. [The Pecks] agree[] to pay the purchase price to [Nakkim] in by way [sic] of **AGREEMENT OF SALE** as follows: . . . 2) It is agreed that [the Pecks] shall build on [Nakkim's] property a **HOME** as defined in **CONSTRUCTION CONTRACT** documents.

Nakkim does not show why the construction of the Home was an event that had to have occurred before performance on the contract was to commence, nor can she rebut the presumption that the construction of the Home was a promise. See Brown, 82 Hawai'i at 246, 921 P.2d at 166; see also Calderia, 49 Haw. at 325, 417 P.2d at 828. Construction of the Home as a condition precedent would also contravene the definition of that term under Adair, as construction of the Home was clearly an obligation, nonperformance of which would constitute default. See Adair, 51 Haw. at 112, 452 P.2d at 454. Therefore, construction of the Home was not a condition precedent, but rather, part of the consideration for the transfer of the Property.

Nakkim also alleges that the Agreement of Sale was breached because Peck failed to assist her in gaining the Design Committee's approval for construction because he did not prepare a color board, as required by the Design Committee. The Circuit Court found in (unchallenged) FOF 11 that Nakkim was responsible for obtaining approvals from the Design Committee. Because Nakkim had difficulty obtaining the necessary approvals from the Design Committee, the Circuit Court also found, in (unchallenged) FOF 13, that "the delay in the start of construction on [the Property] was not the fault of the Plaintiffs, but primarily attributable to [Nakkim's] failure to get approvals from the [Design Committee] in a timely fashion." "Findings of fact . . . that are not challenged on appeal are binding on the appellate court." Okada Trucking Co. v. Bd. of Water Supply, 97 Hawai‘i 450, 458, 40 P.3d 73, 81 (2002) (citing Taylor-Rice v. State, 91 Hawai‘i 60, 65, 979 P.2d 1086, 1091 (1999) (noting that, in failing to challenge any of the trial court's findings of fact, the State had waived any challenge to those findings and, thus, that they were binding on appeal)) (additional citations omitted). Even if we were to construe Nakkim's argument as challenging these findings, we conclude that they are sufficiently supported by the record and not clearly erroneous, as the Construction Contract clearly states that "[Nakkim] shall secure and pay for necessary approvals, easements, assessments and charges required for the construction, use or occupancy of structures."

Next, Nakkim argues that the Pecks failed to make all of the required payments under the Agreement of Sale. However, in FOF 15, the Circuit Court found that the Pecks "continued to tender to [Nakkim] the monthly payments due under the Agreement of Sale." FOF 15 is supported by the record, as the Pecks made the $1,054.42 monthly payments to either Continental Pacific or Nakkim, as required under the Agreement of Sale. Nakkim argues that "[Mr. Peck] could hardly have complied with the terms of the [A]greement of [S]ale if he missed 16 of the fifty-six monthly payments due . . . ." It appears, however, that Peck continued

to tender payments until April 1, 2007, well after this suit was filed, but that some payments were tendered directly to Nakkim as she had directed Continental Pacific to cease accepting the payments. In its FOFs, COLs, and Order, the Circuit Court ordered the Pecks to pay off the balance of the mortgage and pay Nakkim for the "advances" made by her, which were the Pecks' obligations under the Agreement of Sale.

Nakkim also points to the missing March 2004 payment as evidence of the Pecks' breach. The Pecks did not make the March 2004 payment until August 13, 2004, after being notified of the arrearage through Nakkim's August 12, 2004 letter, well after the 40-day grace period provided in the Agreement of Sale. The Pecks, however, appear to have cured the default within 10 days of Nakkim's August 12, 2004 letter, as required by the Agreement of Sale. Further, the record does not reflect that her August 12, 2004 letter, or any other written notification, was sent through registered or certified mail, which was also required under the Agreement of Sale for notice of default. As such, although the Pecks' March 2004 payment was late, the Pecks nonetheless made all required payments under the Agreement of Sale by properly curing its default.[4] Accordingly, we conclude that FOF 15 was not clearly erroneous.

Nakkim also contends that, by constructing a house on the Property for a friend, Patricio Barbis, the Pecks breached Section VII of the Agreement of Sale, which states:

> As stated above, a default will be construed if:
> . . . .
>
> (b) [The Pecks] [t]ransfer[] possession of the property, assigns this agreement, etc. without the permission and consent of [Nakkim].
> (c) [The Pecks] [c]reate[] any other liens against the property or jeopardizes [Nakkim's] interest in same (with

---

[4] Hawai'i courts disfavor forfeiture in agreements of sale and have held that "where the vendee's breach has not been due to gross negligence, or to deliberate or bad-faith conduct on his part, and the vendor can reasonably and adequately be compensated for his injury, courts in equity will generally grant relief against forfeiture and decree specific performance of the agreement." Jenkins v. Wise, 58 Haw. 592, 597, 574 P.2d 1337, 1341 (1978) (citations omitted). Nakkim does not argue any grossly negligent or ill-intended reason for the late payment, nor does she argue that the late payment was not reasonably and adequately compensated by the August 13, 2004 check.

> [Nakkim] giving [the Pecks] the opportunity to correct said
> lien, etc. within TEN days of notification of same)[.]

          . . . .

A lien is generally defined as "[a] legal right or interest that
a creditor has in another's property . . . ." Black's Law
Dictionary 1006 (9th ed. 2009).  Nakkim does not provide a cogent
reason why the construction of the house on the Property created
a "legal right or interest that a creditor has" on the Property,
nor does she point to anything in the record to support her
contention that "Barbis took out the building permit as the
'legal' owner and later informed Nakkim that he had purchased
part of the property from Peck."  In contrast, Peck testified
that Barbis had not purchased the Property.  The record further
reflects that Barbis remains in Peru, and that he was not allowed
to leave due to problems with his visa.  Thus, Nakkim's argument
that the Circuit Court erred by failing to find that the Pecks
violated the Agreement of Sale through the arrangements with
Barbis is without merit.

          Nakkim's next contention, that the Circuit Court erred
by failing to find that the Pecks violated the Agreement of Sale
by failing to lease 40 acres of the Property for her horses, is
also without merit.  Peck testified that Nakkim brought four
horses onto the Property in early 2004 and that two remained at
the time of trial.  Further, Nakkim did not make the $1,000 a
year payment she was required to pay under the Agreement of Sale.
Nakkim does not point to any facts in the record contradicting
Peck's testimony, and accordingly, her argument of a breach
related to the lease for horses is unavailing.

          Finally, Nakkim contends that Peck, Inc. breached the
Construction Contract through its "failure to cooperate with
Nakkim, and [its] persistent stalling and put-off tactics" and
its "unwarranted demand for a price increase[.]"  First, as
discussed above, it was Nakkim's contractual responsibility to
obtain the Design Committee's approval, and thus, the related
delay in the construction of the Home was attributed to her.
Nakkim also contends that Peck, Inc. was not allowed to

unilaterally raise the price of the Contract Sum through its July 14, 2004 letter, and its demand to do so was an anticipatory breach of the Contract. However, in (unchallenged) FOF 14, the Circuit Court found that "the Contract Sum was not in fact increased" and that Peck or Peck, Inc. had merely given notice that "he or it intended to increase the Construction Sum. However, he or it did not go forward with the procedure set forth in the Construction Contract for an actual increase in the Construction Sum."

In addition, in FOF 9, which Nakkim challenges on appeal, the Circuit Court found that the Construction Sum "was subject to adjustment." Specifically, the Circuit Court noted that the Construction Contract provides that the Contract Sum is "subject to additions and deductions as provided in the Contract documents." The Circuit Court also found that the Additional Costs Clause "permitted [Peck, Inc.] to make a claim for an increase in the Contract Sum because of additional cost on certain specific grounds plus 'other reasonable grounds.'" In FOF 10, the Circuit Court found that, although the Plaintiffs did not increase the Construction Sum by its July 14, 2004 letter, they had "reasonable ground[s]" to do so under the Additional Cost Clause, namely, as stated in its July 14, 2004 letter, due to increases in construction costs during the delay caused by Nakkim's failure to obtain approval from the Design Committee. These findings are supported by the record and, therefore, not clearly erroneous. Accordingly, Nakkim's failure to cooperate and anticipatory breach arguments are without merit.

B. No Breach By Nakkim

Nakkim argues that the Circuit Court erred by ordering specific performance of the Agreement of Sale without concluding that Nakkim had breached the Contract. Nakkim points to the Circuit Court's apparent rejection (by crossing it out of the proposed form of order) of an FOF/COL stating that "[Nakkim] unilaterally cancelled and repudiated the Construction Contract without just cause thereby relieving [Peck, Inc.] of further performance thereunder." From this, Nakkim argues that the

Circuit Court implicitly found that she had not breached the Construction Contract.

In response, Plaintiffs argue that "[t]he trial evidence clearly showed that [Nakkim] tried to unilaterally repudiate the agreement of sale while continuing to accept payments under the agreement of sale for years." Specifically, Plaintiffs point to the fact that Nakkim attempted to sell the Property behind their backs.

Generally, "an action on a contract, either for specific performance or damages, requires the allegation and proof of a breach by the defendant." Kaleikau v. Hall, 27 Haw. 420, 430 (Haw. Terr. 1923). "Where there has been a threatened or actual breach of a contract of sale, the determination of whether specific performance should be granted rests within the sound discretion of the trial court." Hawaiian Paradise Park Corp. v. Friendly Broad. Co., 414 F.2d 750, 758 (9th Cir. 1969) (citing McFarland v. Gregory, 322 F.2d 737 (2d Cir. 1963); 5A CORBIN ON CONTRACTS, § 1136). Whether a party to a contract committed an anticipatory repudiation is generally a question of fact. See Romig v. deVallance, 2 Haw. App. 597, 605, 637 P.2d 1147, 1153 (1981) (holding that whether lack of adequate assurance amounts to anticipatory repudiation is an unresolved factual issue on a motion for summary judgment); Lee v. Thunder Dev., Inc., 711 P.2d 978, 980 (Or. Ct. App. 1985) ("Whether or not an unequivocal repudiation occurred is a question of fact.").

Here, the Circuit Court clearly erred by failing to enter any findings of fact or conclusions of law as to whether Nakkim was threatening to or in actual breach of either the Agreement of Sale or the Construction Contract. In rendering its judgment of specific performance on the Agreement of Sale against Nakkim and in favor of the Plaintiffs, the Circuit Court simply found that "the delay in the start of construction on [Nakkim's] Waikiʻi Ranch property was not the fault of Plaintiffs, but primarily attributable to [Nakkim's] failure to get approvals

14

from the Design Committee in a timely fashion." However, pursuant to the holdings in <u>Kaleikau v. Hall</u> and <u>Hawaiian Paradise Park Corp. v. Friendly Broad. Co.</u>, there must be a finding by the Circuit Court on whether there the party against whom the specific performance has been issued was threatening to or in actual breach. <u>Kaleikau</u>, 27 Haw. at 430; <u>Hawaiian Paradise Park Corp.</u>, 414 F.2d at 758. In issuing its Judgment without such a finding, the Circuit Court "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of [Nakkim]." <u>Clarkin</u>, 2 Haw. App. at 624, 638 P.2d at 861 (citations omitted). Without a finding of fact on whether Nakkim (anticipatorily) repudiated the Agreement of Sale, this Court cannot properly review the issue. Accordingly, it was error for the Circuit Court to order specific performance without entering a finding that Nakkim was threatening to or in actual breach.

C.     Adequate Assurances

Nakkim also argues that as a result of Peck, Inc.'s July 14, 2004 letter regarding price increases due to increased expenses, she was entitled to adequate assurance of performance, and by the Plaintiffs' failure to provide her with such assurances, they anticipatorily repudiated the Contract. It appears, however, that the "adequate assurances" Nakkim claims were due were assurances that the Home would be built with no price changes, as opposed to adequate assurances that the Home would be built in accordance with the Contract. In light of our conclusion that the Circuit Court did not clearly err in FOFs 9 and 10, and based on (unchallenged) FOF 14, we conclude that this argument is without merit.

D.     The Indivisible Contract

In Nakkim's final arguments, she contends that "the Circuit Court made a double error in concluding (a) the agreement of sale and construction agreements were mutually independent, and (b) notwithstanding Peck's default of the construction

15

agreement, Nakkim was still obligated to perform under the sale agreement." Relatedly,[5] Nakkim argues that the Circuit Court erred by ordering specific performance of the Agreement of Sale when the Home had not been completed, which she states was her bargained-for consideration. Further, she argues:

> Where contracting parties provide for a tangible form of consideration as opposed to money, the court cannot "remake" the contract and force the promisee to accept money in place of the tangible consideration he or she bargained for. It is the function of courts to construe and enforce contracts made by the parties, not to make or alter them. Strouss v. Simmons, 66 Haw. 32, 40, 657 P.2d 1004, 1010 (1982).

Rather than specifically enforcing the Agreement of Sale, Nakkim argues that the Circuit Court should have also specifically enforced the Construction Contract because she had not received her bargained-for consideration, and claims error in the Circuit Court's finding that the terms of the Construction Contract were "too imprecise to specifically enforce." We consider these arguments in light of the Circuit Court's (unchallenged) FOF 4, wherein the court found that the Agreement of Sale and Construction Contract, although set forth in two documents "were intended by the parties to be an expression of a single agreement."

It is axiomatic that:

> In rendering a decree of specific performance, the court has no power to decree performance in any other manner than according to the agreement of the parties. A court of equity cannot make a new contract for the parties or supply any material stipulation of the contract, but must enforce the contract according to its terms or not at all. It will not undertake to compel the defendant to do something he or she did not contract or agree to do.

71 AM. JUR. 2D Specific Performance § 230 (2012) (footnotes omitted); see also Schrader v. Benton, 2 Haw. App. 564, 567, 635

---

[5] In her final point of error, however, Nakkim asserted that the Circuit Court "erred in finding that Nakkim failed to give notice of default under the [Agreement of Sale] to Peck, in that Nakkim's letters to Peck constituted notice." Because no argument was advanced in furtherance of this point of error, this point of error is deemed waived. HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

P.2d 562, 566 (1981) (rejecting alternative form of specific performance that might deprive the parties of the full benefit of the substance or essence of their bargain); Vierra v. Ropert, 10 Haw. 294, 300-01 (1896).

In this case, the Circuit Court abused its discretion by ordering specific performance of the terms of the Agreement of Sale, but not the Construction Contract.  There is nothing in the Agreement of Sale or Construction Contract to suggest that monetary compensation would suffice in lieu of the agreed-upon methods of payment for the Property, which were assumption of the Continental Pacific mortgage and construction of the Home.  Thus, the Circuit Court's decree ordering the sale of the Property for monetary compensation was contrary to the literal terms of the Contract, which was thereby reformed.

Additionally, requiring Nakkim to accept monetary compensation appears to have deprived her of the full benefit of the substance or essence of their bargain because, as the Circuit Court found, the parties intended the Agreement of Sale and Construction Contract to be the embodiment of a single agreement, and in that agreement, Nakkim was to convey the Property in exchange for the construction of the Home.  Cf. Schrader, 2 Haw. App. at 567, 635 P.2d at 564 (1981); also Paris v. Greig, 12 Haw. 274 (Haw. Terr. 1899) (holding that specific performance of a part only of a contract may be decreed where, by its terms its different parts are divisible, or specific performance may be decreed pro tanto with an abatement of the purchase price even though the contract is not by its terms severable if the part that cannot be enforced is of little consequence as compared with the remainder).

The Circuit Court's decree of specific performance as to only the Agreement of Sale is irreconcilably conflicting with its unchallenged finding that the Agreement of Sale and Construction Contract were intended to form a single agreement. By ordering specific performance of only one part of that single

17

agreement, the Circuit Court reformed the Contract and destroyed Nakkim's bargained-for consideration by substituting monetary compensation for the construction of the Home. Therefore, we conclude that the Circuit Court abused its discretion in ordering specific performance, as the court's decree "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Clarkin v. Reimann, 2 Haw. App. at 624, 638 P.2d at 861 (citations omitted). Accordingly, we vacate FOFs 17 and 18 (as further review of this finding also may be necessary on remand), as well as the Circuit Court's COLs (which may be altered, depending on the court's further review).

V.    CONCLUSION

For these reasons, the Circuit Court's October 2, 2008 Judgment and Decree of Specific Performance is vacated and remanded for further proceedings consistent with this memorandum opinion.

DATED: Honolulu, Hawai'i, December 20, 2013.

On the briefs:

Paul J. Sulla, Jr.
for Defendant-Appellant
LYNN LINDER NAKKIM

Douglas L. Halsted
for Plaintiffs-Appellees

Presiding Judge

Associate Judge

Associate Judge

18